O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PROMEX, LLC, a Florida Limited Liability Company; and YOLANDA EUSTAQUIO, an individual,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>CLAUDIA HERNANDEZ, an individual and formerly doing business as PRODUCTOS ZAPOTOL; PRODUCTOS ZAPOTOL, CORP., a California Corporation; and DOES 1-10, inclusive,<br><br>　　　　Defendants. | CASE NO. CV 09-06439 ODW (SHx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

## I. BACKGROUND

Plaintiffs, ProMex, LLC ("ProMex") and Yolanda Eustaquio ("Eustaquio" or collectively as the "Plaintiffs"), instituted this action against Defendants, Claudia Hernandez, formerly doing business as Productos Zapotol ("Hernandez") and Products Zapotol Corp. ("Zapotol" or collectively as the "Defendants"). Plaintiffs seek damages and injunctive relief resulting from Defendants' unlawful production, distribution, and sale of an anti-itch skin cream designated, QUADRYDERN N.F., in violation of

Plaintiffs' registered trademark CREMA CUADRIDERMA® ("CREMA CUADRIDERMA"), Registration No. 2,906,539. Plaintiffs also aver that Defendants' alleged actions constitute breach of the Mutual Release and Settlement Agreement (the "Agreement"), as well as other violations of the Lanham Act and California statutory law.

Prior to this case, on or about December 9, 2005, Hernandez filed a complaint in this district seeking declaratory relief that the QUADRYDERN N.F. mark did not infringe on Eustaquio's CREMA CUADRIDERMA trademark. On or about March 17, 2006, Plaintiffs filed counterclaims, alleging, *inter alia*, trademark infringement. Ultimately, on or about February 4, 2008, the parties entered into the Agreement. Pursuant to the Agreement, all claims and counterclaims were dismissed.

In addition, under the terms of the Agreement, Defendants agreed to "restrict her use of QUADRYDERN N.F. to "Southern California." Defendants also agreed to "confer in good faith" and "take whatever steps . . . necessary or appropriate to avoid any likelihood of trade and/or consumer confusion" with respect to the CREMA CUADRIDERMA trademark. Further, Defendants agreed that the non-breaching party would be entitled to injunctive relief, in addition to monetary damages, against the breaching party for breach of the Agreement.

Based on the foregoing, the Court held a bench trial on January 11, 2011. In addition, the parties submitted further briefing on February 4, 2011 and February 11, 2011. The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II. **FINDINGS OF FACT**

1. Plaintiffs are the owners and the exclusive licensee of CREMA CUADRIDERMA.

2. CREMA CUADRIDERMA is the mark and design for an over the counter proprietary cream for itching and inflammation, anti-fungus and antibiotic purposes.

3. Defendants use the QUADRYDERN N.F. mark in connection with its skin cream products.

2

4. Pursuant to the Agreement, the parties agreed, *inter alia*, that Defendants' products bearing the QUADRYDERN N.F. mark will not be sold beyond the geographical limitations of "Southern California."

5. The Agreement does not define "Southern California."

6. Plaintiffs propounded Requests for Admissions which included, among other things, the definition of the term, "Southern California." (*See* Tr. Exh. 26 at 3.)

7. In response to the Requests for Admissions, Defendants failed to make objections to the following definition: "Southern California shall mean the geographic portion of the State of California that is comprised of the following counties: Los Angeles, San Diego, Orange, San Bernardino, Riverside, Ventura, Imperial and Santa Barbara."

8. As early as February 18, 2008, Defendants continued selling products bearing the QUADRYDERN N.F. mark to entities outside Southern California as defined in the Plaintiffs' Request for Admissions. Specifically, an invoice dated February 18, 2008 shows that a certain quantity of Defendants' products was sold to Perez Distributing Fresno, Inc. ("Perez Fresno").

9. Perez Fresno is a California corporation doing business at 2139 North Pleasant Avenue, Fresno, California 93705 as indicated on the corresponding invoices.

10. In addition to Perez Fresno, Defendants sold similar products to business entities in Oklahoma, North Carolina, and Georgia. (*See* Tr. Exh. 32.)

11. These business entities maintain business relations with Plaintiffs in addition to Defendants.

12. Total gross profits as a result of Defendants' sales outside Southern California from February 2008 to October 2009 was approximately $96,115.54 (Net Profits amounting to $50,705.36). (Tr. Exh. 32.)

13. Plaintiffs agreed to formally abandon its trademark, T-RAMICINA® ("T-RAMICINA"), Registration No. 3,011,201 with the United States Patent and Trademark Office ("USPTO") within thirty (30) days from the date of the Agreement.

14. Plaintiffs failed to file a request for abandonment of T-RAMICINA within thirty days.

15. Plaintiffs stopped using the T-RAMICINA mark in connection with their commercial products.

16. Defendants are the owner of the registered trademark, TERMICINA® ("TERMICINA"), Registration No. 3,501,558.

17. The Court adopts additional facts as stipulated in the Joint Statement of Stipulated Facts. (*See* Dkt. No. 43.)

18. To the extent any findings of fact may be deemed conclusions of law, they shall also be considered conclusions of law.

### III.  CONCLUSIONS OF LAW

1. As an initial matter, Defendants failed to object to the meaning of "Southern California" as defined in Plaintiffs' Request for Admissions. As such, the Court deems the matter admitted and defines "Southern California" to include the geographic portion of the State of California that is comprised of the following counties: Los Angeles, San Diego, Orange, San Bernardino, Riverside, Ventura, Imperial and Santa Barbara. *See* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established . . . ."). Regardless, to the extent that Defendants argue that Fresno, California can somehow be construed to be "Southern California," the Court finds no evidence that the parties involved, including the attorneys who drafted the Agreement, understood Fresno, California to be within the geographical limitations of Southern California. Rather, Plaintiffs' Request for Admissions and common sense reveal that Fresno, California is indeed beyond Southern California.

2. In addition, Plaintiffs' claims alleging violations of the Lanham Act and California Unfair Competition laws related to CREMA CUADRIDERMA are not viable in this case. The Court finds that all such claims were mutually released by all parties pursuant to the Agreement. (*See* Mutual Release and Settlement Agreement, Tr. Exh. 1, at 4.)

3. Specifically, the Agreement states, in pertinent part: "Each party to this

1  Agreement . . . now and forever will release and discharge the other Party to this
2  Agreement . . . from any and all claims, demands, losses, expenses, damages, liabilities,
3  actions, and causes of action of any nature, that in any manner arise from or relate to the
4  dispute identified in the Recitals." (*Id.*) Accordingly, because CREMA
5  CUADRIDERMA was at issue as identified in the Recitals of the Agreement, Plaintiffs'
6  claims related to CREMA CUADRIDERMA cannot be asserted against Defendants at
7  this time.

8      4.     The Agreement, however, allows claims that may arise under the
9  Agreement itself.  It provides, in part: "[All claims are released] except for claims that
10 may arise under this Agreement itself."  (Tr. Exh. 1 at 4.)  Hence, Plaintiffs' breach of
11 contract claim is the sole claim that survives the broad release provision in the
12 Agreement.

13     5.     A cause of action for breach of contract requires proof of the following
14 elements: (1) existence of the contract; (2) plaintiff's performance or excuse for
15 nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the
16 breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (Ct. App. 2008).
17 "Under general contract principles, when one party breaches a contract the other party
18 ordinarily is entitled to damages sufficient to make that party whole, that is, enough to
19 place the non-breaching party in the same position as if the breach had not occurred."
20 *Postal Instant Press, Inc. v. Sealy*, 43 Cal. App. 4th 1704, 1708-09 (Ct. App. 1996); 1
21 WITKIN, SUMMARY OF CAL. LAW, CONTRACTS § 852 (10th ed. 2005).  In this case,
22 Defendants breached the Agreement by failing to restrict the sale of the QUADRYDERN
23 N.F. product to Southern California. Specifically, uncontroverted evidence and testimony
24 show that Defendants continued to sell beyond Southern California after the Agreement
25 was signed  and as early as February 18, 2008.  (*See, e.g.*, Tr. Exh. 32.)  Lastly, it is
26 undisputed that, during this time, Defendants sold to businesses who had prior business
27 relations with the Plaintiffs.

28     6.     The Court wholly rejects Defendants' contention that their obligations

pursuant to the Agreement extinguished when Plaintiffs failed to formally abandon the T-RAMICINA registered trademark. Whether a particular breach will give the injured party the right to refuse further performance, *i.e.*, terminate the contract, turns on whether the breach was material. *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993 ("A breach will justify rescission of a licensing agreement only when it is of so material and substantial a nature that [it] affect[s] the very essence of the contract and serve[s] to defeat the object of the parties . . . . [The breach must constitute] a total failure in the performance of the contract." ) (citation omitted); *see also Brown v. Grimes*, 192 Cal. App. 4th 265, --- Cal. Rptr. 3d ----, 2011 WL 242425 at *7 (Ct. App. Jan. 27, 2011) ("Whether a partial breach of a contract is material depends on "the importance or seriousness thereof and the probability of the injured party getting substantial performance.") (citation omitted); *Superior Motels, Inc. v. Rinn Motor Hotels*, Inc. 195 Cal. App. 3d 1032, 1051 (Ct. App. 1987) (finding that a breach is material if it is so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract).

    Here, Eustaquio's failure to file the application to abandon the T-RAMICINA mark was a breach of the Agreement. The breach, however, was not material. The crux of the dispute that resulted in the Agreement involved Plaintiffs' CREMA CUADRIDERMA and Defendants' potential infringement with the use of their mark, QUADRYDERN N.F. The resolution of all claims surrounding CREMA CUADRIDERMA with a condition allowing, *inter alia*, Defendants to sell within the geographical limitations of Southern California, was fundamental and essential to the Agreement. As such, the essence of the Agreement was related to the resolution of issues surrounding Plaintiffs' CREMA CUADRIDERMA trademark and Defendants' potentially infringing mark, QUADRYDERN N.F.

    The Court recognizes that Plaintiffs' formal abandonment of T-RAMICINA may have been important to Defendants. That condition, however, could not have been the essence of the Agreement because: (1) Plaintiffs were allowed to continue using the T-

RAMICINA trademark regardless of its formal abandonment with the USPTO, (*See* Tr. Exh. 1 at 3.); (2) T-RAMICINA was not the trademark at issue underlying the lawsuits between the parties in this case; (3) Defendants successfully registered a similar trademark, TERMICINA, which seemingly was the basis for the condition requiring T-RAMICINA's formal abandonment; and (4) Plaintiffs admit to have stopped using T-RAMICINA in relation to its commercial products, *see Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 935-36 (9th Cir. 2006) (citing 15 U.S.C. § 1127) ("The Lanham Act defines abandonment as: (1) discontinuance of trademark use and (2) intent not to resume such use."). In addition, Defendants suffered no harm as a result of Plaintiffs' breach for the same reasons stated above. As such, the Court finds Defendants' contention that Plaintiffs' failure to formally abandon T-RAMICINA discharged Defendants of their duties to perform as flawed. Hence, Defendants did not have the right to refuse further performance under the Agreement. Consequently, Plaintiff's breach was immaterial and did not serve as justification for Defendant's breach.

      7.     Generally, accounting for defendants' profits is a permissible measure of damages for Lanham Act violations. *See Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123-24 (9th Cir. 1968). Damages for a breach of contract, however, must be certain. CAL. CIV. CODE § 3301 ("No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."). "The measure of damages is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." *Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001). Specifically regarding lost profits, as alleged here, "[i]t has long been settled in California that the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged." *Id.* (citations omitted). Plaintiffs must demonstrate a reasonable probability that profits would have been earned except for the Defendants' conduct. *Kerner v. Hughes Tool Co.*, 56 Cal. App. 3d 924, 937 (Ct. App. 1976). Recovery of profits is possible only under

exceptional circumstances. *Cal. Press Mfg. Co. v. Strafford Packing Co.*, 192 Cal. 479, 485-86 (1923) ("[G]reater number of cases such [of] expected profits are too dependent upon numerous, uncertain, and changing contingencies to constitute a definite, and trustworthy measure of actual damages.").

8. Plaintiffs' evidence is solely based on an undisputed figure of Defendants' profits from February of 2008 to October of 2009. It is generally improper for Plaintiffs, as here, to measure damages by the gain to the Defendants, rather than the loss to the Plaintiffs. *See Gregory v. Spieker*, 110 Cal. 150, 155 (1895). Based on the lack of evidence indicating otherwise, the Court finds that Defendants' profits cannot be directly correlated to Plaintiffs' loss above the speculative level. *See General Paint Corp. v. Seymour*, 124 Cal App. 611, 616 (Ct. App. 1932) ("Whether respondent suffered a corresponding loss is purely speculative.") To do so would require the Court to assume that, but for Defendants' sales, Plaintiffs would have made the same exact sale to the same entities in Georgia, North Carolina, Oklahoma, and Fresno, California during the relevant period. The Court refuses to adopt such a conclusion because the record does not support such a determination with reasonable certainty. Accordingly, the Court finds that basing Plaintiffs' damages solely on Defendants' profits is too speculative, and as a result, improper.

9. Even where no actual damages can be established, a plaintiff who has established that a contract was breached is entitled to an award of nominal damages as the breach itself is a "legal wrong that is fully distinct from the actual damages." *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (Ct. App. 1959); *see also* CAL. CIV. CODE § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages"). Hence, the Court awards Plaintiffs nominal damages in the amount of $1.00.

10. While the Plaintiffs seek injunctive relief enjoining Defendants from selling any products bearing the QUADRYDERN N.F. mark anywhere in the United

8

States, the Court is reluctant to rewrite the Agreement to which the parties mutually entered. Accordingly, the Court finds that the Agreement shall continue to be in force as written and contemplated by the parties unless and until the parties modify that agreement.

11. To the extent any conclusions as stated may be deemed findings of fact, they shall also be considered findings of fact.

## IV.   <u>CONCLUSION</u>

Based on its findings of fact and conclusions of law, the Court finds that Plaintiffs are entitled to have judgment entered in their favor. The Court awards Plaintiffs nominal damages in the amount of $1.00. Plaintiffs shall file a proposed judgment in accordance to this Order.

IT IS SO ORDERED.

March 2, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE